IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA

v.                           CRIMINAL NO.:  WDQ-11-0302

DAREN KAREEM GADSDEN

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Daren Kareem Gadsden is charged with bank fraud and other crimes.  Gadsden has moved to dismiss the Third Superseding Indictment, for the Judge's recusal, for disclosure, and to exclude evidence.  For the following reasons Gadsden's dismissal, recusal, and disclosure motions will be denied.  His motion to exclude evidence will be decided at trial.

I.  Background

Gadsden was indicted on December 21, 2011, on (1) one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, (2) one count of aggravated identity theft in violation of 18 U.S.C. §§ 2, 1028A(a)(1) & (c)(5), and (3-4) two counts of attempting to tamper with evidence or evidence tampering in

violation of 18 U.S.C § 1512(c)(1).   ECF No. 52 (Second Superseding Indictment).[1]

The Second Superseding Indictment alleges that in early 2010, the Housing Authority of Baltimore City ("Housing Authority") lost several thousand dollars in unauthorized Automated Clearing House ("ACH") transactions. *Id.* at 3.   When confronted about the losses, Gadsden denied wrongdoing but settled the claims for $1400. *Id.* at 7.

Gadsden contacted Tyeast Brown, who brought William Darden and Keith Daughtry into the conspiracy. *Id.* at 4.   Gadsden registered Keith Daughtry Contracting LLC ("the LLC") with the Maryland Department of Assessments and Taxation; Darden opened a bank account for the LLC on May 25, 2010. *Id.* at 5.   The conspirators registered the LLC's account in the ACH network. *Id.*   Using the ACH, they then transferred funds from the Housing Authority to the LLC's account. *Id.*

Brown arranged for others to buy debit cards, which received funds through the ACH from the LLC's account during the summer of 2010. *Id.* at 6.   Gadsden periodically checked the account balances on the debit cards. *Id.* at 7.

---

[1] Other defendants were charged in the original and First Superseding Indictments. *See* ECF Nos. 1, 16.   Gadsden was not charged until the Second Superseding Indictment. *See* ECF No. 52.

The conspirators also used a Fisher Consulting LLC bank account to receive ACH transfers during the summer of 2010. *Id.* at 7. In late August 2010, Gadsden made purchases in Las Vegas, Nevada, with a Fisher Consulting LLC account debit card. *Id.* Gadsden withdrew money from the LLC's account at an ATM on September 11, 2010. *Id.* at 9. The conspirators obtained $1.4 million from the Housing Authority account through unauthorized ACH transfers. *Id.*

On January 10, 2012, Arthur Reynolds, Jr., Esquire, replaced Gadsden's appointed counsel. *See* ECF Nos. 72, 80. On January 11, 2012, Gadsden moved for reconsideration of his pretrial detention. On January 12, 2012, Reynolds was injured in an automobile accident, and could not practice law for several months. ECF No. 137 at 3. To assist Reynolds, Antoini Jones, Esquire, appeared for Gadsden. ECF No. 119.

On February 3, 2012, Magistrate Judge Connelly denied reconsideration of Gadsden's pretrial detention. *See* ECF No. 74; Docket 02/03/2012.[2] Also on February 3, 2012, the parties filed a discovery agreement signed by Reynolds and Assistant United States Attorney Sujit Raman. ECF No. 85 at 3. Under the

---

[2] On March 1, 2012, Gadsden filed a Second Motion for Reconsideration. ECF No. 99. Magistrate Judge Connelly has not ruled on this motion. *See* Docket.

agreement *Jencks*[3] and *Giglio*[4] material would be provided no later than one week before trial.  *Id.* at 1.  *Brady*[5] material not included in Fed. R. Crim. P. 16, *Jencks*, and *Giglio* material would be provided when discovered.  *Id.*  The agreement would be voided if Gadsden filed a motion for discovery under Rule 16 or *Brady*.[6]  *Id.* at 2.  The government provided discovery material to Gadsden on April 3, 2012 (Bates Nos. 1211-7949), ECF No. 114, and May 10, 2012 (Bates Nos. 7950-8033), ECF No. 125.  The government also invited Reynolds "to inspect and to photocopy all of the relevant materials at the United States Attorney's Office."  *See* ECF No. 125.

Trial was scheduled for April 30, 2012; pretrial motions were due February 29, 2012.  ECF No. 35.  Upon Gadsden's motion, ECF No. 100, the pretrial motions date was extended to March 14, 2012.  ECF No. 103.  On April 4, 2012, the trial date was

---

[3] *See* Jencks Act, 18 U.S.C. § 3500.

[4] *See Giglio v. United States*, 405 U.S. 150 (1972).

[5] *See Brady v. Maryland*, 373 U.S. 83 (1963).

[6] The agreement provides:
> Should counsel file any routine motion with the Court which seeks discovery pursuant to Rule 16 or *Brady*, then this discovery agreement will be void, and the Government is not bound by any of the provisions herein.  Specifically, *Jencks* and *Giglio* material may not be provided until the first day of trial if the defendant should file such a motion.  ECF No. 85 at 2.

4

postponed to October 1, 2012, with pretrial motions due June 15, 2012.  ECF No. 115.

On May 2, 2012, the government filed the Third Superseding Indictment charging Gadsden.[7]  The Third Superseding Indictment also charged that $7,775 in unauthorized ACH payments were made to Fisher Consulting LLC in April and May 2012, ECF No. 120 at 3-4, and Gadsden withdrew $900 and $1000 off of Netspend debit cards on August 2, 2010.  *Id.* at 7-8.  Each count of bank fraud alleged an act by Gadsden in execution of the scheme to defraud.[8]

---

[7] He was charged with (1) one count of conspiracy and scheme to defraud in violation of 18 U.S.C. § 1349, (2-9) eight counts of bank fraud under 18 U.S.C. § 1344, (10-11) two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) & (c)(5), and (12) one count of attempting to tamper with evidence and evidence tampering in violation of 18 U.S.C. § 1512(c)(1).  ECF No. 120.  Count 11 in the Third Superseding Indictment is the same aggravated identity theft charge as count 2 in the Second Superseding Indictment.  *Compare* ECF No. 120 at 13, *with* ECF No. 52 at 10.  Count 10 first appears in the Third Superseding Indictment.

[8] They are (2) on April 23, 2010, opening a Netspend debit card in the name of J.F., (3) on April 27, 2010, opening a Netspend debit card in the name of M.G., (4) on May 19, 2010, filing articles of organization for Keith Daughtry Contracting LLC, (5) on June 29, 2010, calling PNC Bank's help line, falsely identifying himself as Keith Daughtry and inquiring how to make ACH transfers, (6) on July 7, 2010, causing an unauthorized ACH transfer of $9,000 from the Housing Authority's account to the account of Keith Daughtry Contracting LLC, (7) on August 27, 2010, purchasing items at Nordstrom's in Las Vegas using a card linked to the Keith Daughtry Contracting LLC account, (8) on September 7, 2010, withdrawing funds from the Keith Daughtry Contracting LLC account from an ATM at the Hartsfield-Jackson International Airport in Atlanta, Georgia, and (9) on September 11, 2010, withdrawing funds from the Keith Daughtry Contracting

On July 18, 2012, Gadsden moved to compel the government to disclose exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963). ECF No. 136. The government did not disclose but sent to Reynolds and filed with the Court a letter demanding that Reynolds withdraw the motion.[9] Reynolds later acknowledged that the motion breached the discovery agreement but refused to withdraw the motion. *See* Telephone Conference July 31, 2012, at 10:30-10:41.

Also on July 18, 2012, Gadsden moved for the Judge's recusal.[10] ECF No. 137. The government filed its opposition the next day. ECF No. 140.

On July 23, 2012, Gadsden moved to exclude evidence of the initial unauthorized ACH transfers and his return of $1400 to Bank of America. ECF No. 141. On August 1, 2012, the government opposed the motion. ECF No. 148.

---

LLC account from an ATM at 1201 Wisconsin Ave., N.W., in the District of Columbia. ECF No. 52 at 10-11.

[9] The government contends that the motion was untimely, the government was aware of its commitments to disclose *Brady* and related material, and the demand violated the terms of the discovery agreement. ECF No. 138 at 1-2.

[10] The grounds for the motion are that (1) Gadsden has been detained pretrial, (2) the Judge presided over Gadsden's 2005 trial for aiding and abetting bank robbery, and (3) the Court denied Gadsden's motion to extend time to file pretrial motions. ECF No. 137.

On July 31, 2012, Gadsden moved to dismiss the Third Superseding Indictment.  ECF No. 147.  On August 11, 2012, the government opposed the motion.  ECF No. 151.

II.  Analysis

A.   Motion to Dismiss the Third Superseding Indictment

Gadsden argues that the Third Superseding Indictment should be dismissed because it is vindictive and multiplicitous.  ECF No. 147.  The government contends that the doctrine of vindictiveness does not apply and the Indictment is not multiplicitous.  ECF No. 151.

1.   Vindictiveness

Gadsden asserts that the additional counts in the Third Superseding Indictment are vindictive because the government brought them in response to Gadsden's rejection of a plea offer and request for a continuance.  ECF No. 147 at 4.  The government contends that the additional charges resulted from its additional time to prepare the case.  ECF No. 151 at 6-7.

A prosecutor violates the Fifth Amendment's Due Process Clause when he punishes a defendant for exercising his constitutional rights.  *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001).  To establish vindictiveness, the defendant must show that "(1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus."  *Id.*

7

The prosecutor has great discretion regarding charging before trial.  "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution.  An initial decision should not freeze future conduct."  *United States v. Goodwin*, 457 U.S. 368, 382 (1982).  The prosecutor is not "locked into the charges in his initial indictment, which might not represent the extent to which an individual is subject to prosecution."  *United States v. Williams*, 47 F.3d 658, 662 (4th Cir. 1995).  In preparing for trial, "the prosecutor may uncover additional information that suggests a basis for further prosecution or he may . . . realize that information possessed by the [government] has a broader significance."  *Goodwin*, 457 U.S. at 381.

There is a presumption of prosecutorial regularity in pretrial charging.  *Wilson*, 262 F.3d at 315.  To succeed on a claim of vindictiveness based on pretrial decisions, the "defendant must show that a prosecutor's decision to bring more severe charges against him was motivated by actual vindictiveness."  *Williams*, 47 F.3d at 662.

Gadsden has provided no evidence that the government added charges because he rejected the plea offer and successfully sought a continuance.  *See* ECF No. 147 at 4.  The government states that, as in *Goodwin,* its continued investigation enabled

8

it to charge additional offenses.  ECF No. 151 at 6-7; *see* 457
U.S. at 368.  Having failed to show evidence of vindictiveness,
Gadsden has not overcome the presumption of prosecutorial
regularity.  *See Wilson*, 262 F.3d at 315; *Williams*, 47 F.3d at
662.

  2.   Multiplicity

  Gadsden argues that the Third Superseding Indictment is
multiplicitous because it charges him with bank fraud for each
of the acts of the conspiracy charge in the Second Superseding
Indictment.[11]  ECF No. 147 at 3.  The government contends that
the Second Superseding Indictment charged one count of bank
fraud *conspiracy*, while the Third Superseding Indictment adds
nine counts of substantive bank fraud, each of which is
chargeable as a separate execution of the scheme to defraud.
ECF No. 151 at 10.

  The prohibition on multiplicity in an indictment "is rooted
in the Double Jeopardy Clause of the Fifth Amendment," and
protects against "successive prosecutions for the same offense

_____

[11] The Second Superseding Indictment contains a charge of
conspiracy to commit bank fraud, not a bank fraud charge.  *See*
ECF No. 147 at 2-3; *see also* ECF No. 52 at 3-9 (conspiracy
charge).  Gadsden attacks the bank fraud charges in the Third
Superseding Indictment as multiplicitous with the conspiracy
charge, not as multiplicitous among themselves.  *See* ECF No. 147
at 3 ("[T]he government has used the exact same facts to charge
nine separate counts of Bank Fraud . . . that were used to
support the one count of Bank Fraud charged in the Second
Superseding Indictment.").

as well as the imposition of cumulative punishment for the same offense in a single criminal trial." *United States v. Shrader*, 675 F.3d 300, 313 (4th Cir. 2012) (internal quotation marks omitted).  To determine whether a claim is multiplicitous, the Court will consider "what Congress has made the allowable unit of prosecution." *Bell v. United States*, 349 U.S. 81, 81 (1955); *see Shrader*, 349 U.S. at 313.  The Court looks "to the language of the statute, being mindful that any ambiguity must be resolved in favor of the defendant." *United States v. Bennafield*, 287 F.3d 320, 323 (4th Cir. 2002).

Section 1344 penalizes the executions, or attempts to execute, a scheme to defraud a financial institution or obtain money or property under the control or custody of a financial institution by false or fraudulent pretenses, representations, or promises.  *See United States v. Colton*, 231 F.3d 890, 908-909 (4th Cir. 2000) (describing execution and not act as the unit of prosecution).  Section 1349 penalizes conspiracy to commit fraud offenses.

The Supreme Court has long held that an individual may be charged and convicted for conspiracy and the underlying substantive offense.  *See Pinkerton v. United States*, 328 U.S. 640, 643-44 (1946).  This principle applies to bank fraud and conspiracy to commit bank fraud.  *See United States v. Whaley*,

No. 3:10-CR-169, 2012 WL 1193352, at *26 (E.D. Tenn. Mar. 5, 2012).

Here, the Third Superseding Indictment charges Gadsden with one count of conspiracy to commit bank fraud under 18 U.S.C. § 1349 and eight counts of bank fraud under 18 U.S.C. § 1344.[12] ECF No. 120 at 9-11.  Section 1349 punishes the conspiracy; § 1344 punishes each execution of the scheme to defraud, rather than the scheme itself.  *See Colton*, 231 F.3d at 908-909.  Under *Pinkerton*, the conspiracy charge is not multiplicitous with the counts of substantive bank fraud.  *Whaley*, 2012 WL 1193352, at *26; *see Pinkerton*, 328 U.S. at 643-44.  Gadsden's motion to dismiss the Third Superseding Indictment will be denied.

B.    Motion for the Judge's Recusal

Gadsden argues for recusal because: (1) Gadsden has been detained pretrial, (2) the Judge presided over Gadsden's 2005 trial for aiding and abetting bank robbery, No. WDQ-05-297, and (3) the Court denied Gadsden's motion to extend time to file pretrial motions.  ECF No. 137.  The government argues that (1) Gadsden's motion is untimely, (2) presiding over Gadsden's trial seven years ago is not a basis for recusal, (3) failure to reverse Magistrate Judge Connelly's detention orders is not evidence of partiality or bias, and (4) the Court postponed

---

[12] In contrast, the Second Superseding Indictment merely charged one count of conspiracy to commit bank fraud.  ECF No. 52 at 3-9.

trial for five months to allow adequate review of discovery.
ECF No. 140.

When the trial was rescheduled to October 1, 2012, the
Court set June 15, 2012, as the deadline for Gadsden's pretrial
motions.  ECF No. 115.  Gadsden's motion for recusal was filed
on July 17, 2012.  ECF No. 137.  Gadsden's motion is untimely.

Even if the motion were timely, recusal is not necessary.
A judge must recuse himself from a proceeding when his impar-
tiality might reasonably be questioned or when he has a bias or
prejudice against a party.  28 U.S.C. § 445(a), (b)(1).  "The
inquiry is whether a reasonable person would have a reasonable
basis for questioning the judge's impartiality, not whether the
judge is in fact impartial."  *United States v. Cherry*, 330 F.3d
658, 665 (4th Cir. 2003) (internal quotation mark omitted).

"Judicial rulings alone almost never constitute a valid
basis" for recusal. *Liteky v. United States*, 510 U.S. 540, 555
(1994).  Instead, they are generally "proper grounds for appeal,
not for recusal." *Id*.  Here, Gadsden requests the Judge's
recusal based upon Magistrate Judge Connelly's denial of his
motions for pretrial release.  ECF No. 137 at 1-2.  Gadsden has
not requested that the Court review Magistrate Judge Connelly's
decisions.  This is an insufficient basis for recusal. *See
Liteky*, 510 U.S. at 555.

12

That the Judge has tried Gadsden in a previous case for aiding and abetting bank robbing is not a basis for recusal.[13]

Finally, Gadsden asserts that the Court's denial of Gadsden's requests for extension of time past March 14, 2012, is evidence of bias.  ECF No. 137 at 3.  In fact, the Court delayed trial from April 30, 2012, until October 1, 2012, and set the deadline for pretrial motions as June 15, 2012.  Gadsden's motion for recusal will be denied.

C.   Disclosure

Gadsden asks the Court to compel the government to provide all exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).  ECF No. 136.  The government demanded that Gadsden withdraw his motion within 48 hours or the discovery agreement would be voided.  ECF No. 138 at 2; *see* ECF No. 85 (Discovery Agreement).  Gadsden's counsel stated that he could not withdraw the motion.  Telephone Conference July 31, 2012, at 10:38-10:41. The government also argues that Gadsden's motion is untimely. ECF No. 138 at 1.

The Due Process Clause requires the prosecution to disclose, upon the defendant's request, evidence "material either to guilt or to punishment, irrespective of the good faith

---

[13] *United States v. Roberts*, 463 F.2d 372, 374 (4th Cir. 1972); *see Smith v. United States*, 360 F.2d 590, 592 (5th Cir. 1966) ("[A] trial judge, who is familiar with a defendant's background by reason of having tried him in previous cases, is not thereby disqualified to try the same defendant in subsequent cases.")

or bad faith of the prosecution." *Brady*, 373 U.S. at 87; *see*

*United States v. Higgs*, 663 F.3d 726, 734-35 (4th Cir. 2011).

Gadsden requests:

> disclosure by the government of all prior fraud[,] theft,
> and confidence game schemes committed by each of the
> codefendants,[14] plus all criminal cases charged against
> them, including any attempts or efforts to extract funds
> through the Automated Clearing House System prior to the
> alleged conspiracy charged in this case.
>
> Defendant requests disclosure of all statements, debriefing
> session notes, plea agreements, grand jury transcripts or
> other records by each of the codefendants substantially
> prior to trial.  Defendant requests disclosure of all
> information concerning the codefendants which may con-
> stitute exculpatory evidence demonstrating the criminal
> expertise and experience of codefendants Brown, Darden[,]
> or Daughtry.

ECF No. 136 at 3-4.  Gadsden asserts the need for this material

because it "rebuts the theory that [Gadsden] was some type of

ringleader who put this entire fraud scheme into motion." *Id.*

at 3.

Gadsden filed the motion on July 18, 2012. *See id.* The

deadline for Gadsden to submit pretrial motions was June 15,

2012.  ECF No. 115.  Gadsden has provided no reason to excuse

the late filing.

---

[14] When Gadsden filed the motion, he was the only defendant
remaining in the case. *See* ECF No. 120 (Third Superseding
Indictment).

Since at least February 3, 2012,[15] Gadsden has been aware of the government's theory of his role in the scheme as compared to the roles of Brown, Darden, and Daughtry.  For example, the Second Superseding Indictment stated that Gadsden "contacted defendant [Brown] in order to plan and execute a larger fraud." *Id.* at 4.  The Third Superseding Indictment did not change this allegation.  *Compare id., with* ECF No. 120 at 6.  The Third Superseding Indictment was filed on May 2, 2012, and on May 15, 2012, Gadsden was arraigned.  ECF Nos. 120, 127.

Gadsden does not argue that the government has breached the discovery agreement in any way, and Reynolds acknowledges that the request violates the agreement.  Telephone Conference July 31, 2012, at 10:38-10:41.  The government provided early disclosures, such as the criminal histories of Daughtry and Darden.  ECF No. 138.  Gadsden also does not provide a reason why the motion was filed over a month after the deadline for pretrial motions when the "ringleader" allegation was in the Second Superseding Indictment.  As Gadsden's motion was filed over a month after the deadline, it is untimely and will be denied.  *See United States v. Newby*, No. 8:08CR216, 2008 WL 4559757, at *1 (D. Neb. Oct. 9, 2008).

---

[15] This is when Gadsden was arraigned on the Second Superseding Indictment, which had been filed on December 21, 2011.  *See* ECF Nos. 52, 82.

D.    Motion in Limine to Exclude Admission of Rule 404(b)
Evidence

Gadsden seeks to prohibit the government from introducing
evidence of unauthorized ACH transfers from the Housing Author-
ity's account that Gadsden settled by paying the Housing Author-
ity $1,400 under Fed. R. Evid. 404(b).  ECF No. 141 at 2.  The
government argues that the evidence is intrinsic to the
government's case or, alternatively, that it is not barred by
Rule 404(b) because it establishes a commons scheme or plan,
identity, and an absence of mistake.  ECF No. 148 at 3, 6.

Rule 404(b) prohibits the admission of evidence of a prior
crime or other bad act "to show that on a particular occasion
the person acted in accordance with the character."  Fed. R.
Evid. 404(b)(1).  Such evidence "may be admissible for another
purpose, such as proving motive, opportunity, intent,
preparation, plan, knowledge, identity, absence of mistake, or
lack of accident."  *Id.* 404(b)(2).

Evidence of uncharged conduct is not barred by Rule 404(b)
if it "arose out of the same series of transactions as the
charged offense, or if [it] is necessary to complete the story
of the crime on trial."  *United States v. Siegel*, 536 F.3d 306,
316 (4th Cir. 2008) (internal quotation marks and alteration
omitted).  Evidence "necessary to provide context relevant to
the criminal charges" is also intrinsic.  *United States v.*

16

*Basham*, 561 F.3d 302, 326 (4th Cir. 2009).  If evidence is intrinsic, it still must "satisfy Rule 403's balancing test." *Id.* at 329.

Extrinsic evidence is admissible under Rule 404(b) if "(1) relevant to an issue other than the general character of the defendant; (2) necessary to prove an element of the charged offense; and (3) reliable." *United States v. Hodge*, 354 F.3d 305, 312 (4th Cir. 2004).  "Additionally, the probative value of the evidence must not be substantially outweighed by the danger that it will cause unfair prejudice." *Id.* (*citing* Fed. R. Evid. 403).[16]  Rule 404(b) is an inclusionary rule; evidence of other crimes or acts is admissible unless it tends to prove only criminal disposition or propensity.  *See United States v. Queen*, 132 F.3d 991, 994-95 (4th Cir. 1997).

Reliability is a prerequisite for admission under Rule 404(b).  *See Hodge*, 354 F.3d at 312.  Evidence of prior bad acts is reliable if a jury could reasonably find, by a preponderance of the evidence, that the act was committed by the defendant.[17]

---

[16] Limiting jury instructions can provide additional protection to defendants.  *Hodge*, 354 F.3d at 312.

[17] To determine whether evidence of a prior bad act is reliable, the Court does not weigh credibility or find that the government has proved the conditional fact by a preponderance of the evidence.  *Huddleston v. United States*, 485 U.S. 681, 690 (1988).  Instead, the Court need only conclude that there is sufficient evidence from which a reasonable jury *could* find by a preponderance that the defendant committed the prior act.  *Id.*

*Huddleston v. United States*, 485 U.S. 681, 690 (1988); *United States v. Hadaway*, 681 F.2d 214, 218 (4th Cir. 1982).   In assessing this "minimal standard of proof," the Court must consider all potential evidence, as "the sum of an evidentiary presentation may well be greater than its constituent parts." *Huddleston*, 485 U.S. at 690-91 (internal quotation marks omitted).

The government asserts that it will use the unauthorized ACH transfers as intrinsic evidence to show that "emboldened" by his initial success, Gadsden "finally undertook the crime that is at the core of the trial."   ECF No. 148 at 4.   It further asserts that the ACH transfers are admissible as extrinsic evidence to establish a common scheme or plan, identity, and absence of mistake in the fraud.   *Id.* at 6.

At trial, the Court will determine whether this evidence is intrinsic or extrinsic; if extrinsic the Court will determine whether it is admissible under 404(b) and gauge the prejudicial effect if it is introduced.

III. Conclusion

For the reasons stated above, Gadsden's motions to dismiss the Third Superseding Indictment, for recusal, and for disclosure will be denied.  His motion in limine to exclude evidence of the ACH transactions under Rule 404(b) will be decided at trial.

_____9/27/12_____
Date

_____
William D. Quarles, Jr.
United States District Judge

19