IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA               *

                                       *

         v.                            *

                                          CRIMINAL NO.: WDQ-11-0302
                                       *

DAREN KAREEM GADSDEN

                                       *


                                       *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Daren Kareem Gadsden is charged with bank fraud and other crimes. Gadsden moved in limine to exclude evidence of uncharged conduct. The government moved in limine to admit evidence regarding Gadsden's 2005 trial for bank robbery and to cross-examine him on his false statements to the police in connection with the 2005 bank robbery. The government also sought to introduce evidence of a similar scheme conducted by Gadsden after the charged offenses. For the following reasons, Gadsden's motion in limine to exclude and the government's motion to admit evidence of the bank robbery and the post-conspiracy scheme will granted in part and denied in part. The government's motion in limine to cross-examine will be granted.

I.  Background

    A.  The 2005 Bank Robbery

On March 1, 2005, Gadsden was the getaway driver in a bank robbery. ECF No. 157 at 2. After his arrest, Gadsden told police officers that he was unaware of the robbery and had been on his cellphone during the robbery and getaway. *Id.* Gadsden's cellphone records showed that he was not using his phone then. *Id.*

At Gadsden's bank robbery trial, FBI Special Agent David Bonney testified that the cellphone records did not indicate any calls at the time Gadsden claimed. *Id.* at 3. The location of the cellphone was not provided to Gadsden in discovery for, or at, this trial. *Id.* at 6. Gadsden was convicted of aiding and abetting the robbery and was sentenced to two years in prison. *Id.* at 8.

    B.  The Bank Fraud Conspiracy

In early 2010, the Housing Authority of Baltimore City ("Housing Authority") lost several thousand dollars in unauthorized Automated Clearing House ("ACH") transactions. ECF No. 120 at 3. When confronted about the losses, Gadsden denied wrongdoing but settled the claims for $1400. *Id.*

Gadsden then contacted Tyeast Brown, who recruited William Darden and Keith Daughtry. *Id.* at 5. Gadsden registered Keith Daughtry Contracting LLC ("KDC") with the Maryland State

2

Department of Assessments and Taxation; Darden opened a bank account for KDC on May 25, 2010. *Id.* at 6. Using the ACH network, the conspirators transferred funds from the Housing Authority to KDC's account. *Id.*

During the summer of 2010, others bought debit cards, and received funds through the ACH from KDC. *Id.* at 7. Gadsden periodically checked the account balances on these debit cards. *Id.*

The conspirators also used a Fisher Consulting LLC bank account to receive ACH transfers during the summer of 2010. *Id.* at 8. The conspirators obtained $1.4 million from the Housing Authority through unauthorized ACH transfers. *Id.* at 9.

On May 2, 2012, the grand jury, in the Third Superseding Indictment, charged Gadsden with 13 counts.[1] ECF No. 120.

On July 23, 2012, Gadsden moved to exclude the initial ACH transfers and his settlement with the Housing Authority. ECF No. 141. The government sought introduction of this testimony. ECF No. 148. On September 22, 2012, the government sought a ruling on the admissibility of cellphone records from Gadsden's

---

[1] He was charged with (1) one count of conspiracy and scheme to defraud in violation of 18 U.S.C. § 1349, (2-9) eight counts of bank fraud under 18 U.S.C. § 1344, (10-11) two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) & (c)(5), and (12-13) two counts of attempting to tamper with evidence and evidence tampering in violation of 18 U.S.C. § 1512(c)(1). ECF No. 120.

2005 trial and evidence that he had not been given cell site data. ECF No. 157. In that motion, it also sought permission to cross examine Gadsden about his false statements to the police after the robbery. Id.

At the beginning of trial, the government moved under Fed. R. Evid. 404(b) to introduce evidence of a similar scheme conducted in early 2011, after the charged offenses, by Gadsden and Darden.

II. Analysis

    A.  Gadsden's Motion in Limine to Exclude Evidence of the Settled Transfer

Gadsden sought to prohibit the government from introducing, under Fed. R. Evid. 404(b),[2] the unauthorized ACH transfers that Gadsden settled for $1400. ECF No. 141 at 2. The government argued that the evidence is intrinsic to its case and is not barred by Rule 404(b) because it establishes a common scheme or plan, identity, and an absence of mistake. ECF No. 148 at 3, 6.

Evidence of uncharged conduct is intrinsic to the charged offense and not barred by Rule 404(b) if it "arose out of the

---

[2] Rule 404(b) prohibits the admission of evidence of a prior crime or other bad act "to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Id. 404(b)(2).

same series of transactions as the charged offense, or if [it] is necessary to complete the story of the crime on trial." *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008) (internal quotation marks and alteration omitted). Evidence "necessary to provide context relevant to the criminal charges" is also intrinsic. *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009). If evidence is intrinsic, it must also "satisfy Rule 403's balancing test."[3] *Id.* at 329.

Extrinsic evidence is admissible under Rule 404(b) if "(1) relevant to an issue other than character; (2) necessary; and (3) reliable." *Siegel*, 536 F.3d at 317 (internal quotation marks omitted). "Evidence is necessary whe[n] it is an essential part of the crimes on trial, or whe[n] it furnishes part of the context of the crime." *United States v. Byers*, 649 F.3d 197, 209 (4th Cir. 2011) (internal quotation marks omitted). Evidence of prior bad acts is reliable if a jury could reasonably find, by a preponderance of the evidence, that the act was committed by the defendant. *Huddleston v. United States*, 485 U.S. 681, 690 (1988); *United States v. Hadaway*, 681 F.2d 214, 218 (4th Cir. 1982).

---

[3] Rule 403 states: "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"Additionally, the probative value of the evidence must not be substantially outweighed by the danger that it will cause unfair prejudice." *United States v. Hodge*, 354 F.3d 305, 312 (4th Cir. 2004) (*citing* Fed. R. Evid. 403).[4] Rule 404(b) is an inclusionary rule; evidence of other crimes or acts is admissible unless it tends to prove only criminal disposition or propensity. *See United States v. Queen*, 132 F.3d 991, 994-95 (4th Cir. 1997).

The government would use the unauthorized ACH transfers as intrinsic evidence that, "emboldened" by his initial success, Gadsden "finally undertook the crime that is at the core of the trial." ECF No. 148 at 4. It also asserted that the ACH transfers are extrinsic evidence that establishes a common scheme or plan, identity, and absence of mistake in the fraud. *Id.* at 6.

Rule 404(b) does not bar evidence of the Housing Authority transfers and settlement. The evidence is intrinsic[5] and is not

---

[4] Limiting jury instructions can provide additional protection to defendants. *Hodge*, 354 F.3d at 312.

[5] Even if the evidence were extrinsic, it meets the three part test of *Siegel* necessary for admission under 404(b). The evidence is not to prove character, but rather a common scheme or plan, identity, or the absence of mistake. *See* Fed. R. Evid. 404(b)(2). The evidence of the plan is relevant to Gadsden's knowledge and intent. *See Byers*, 649 F.3d at 209. Finally, it is reliable, because a rational jury could find by a preponderance of the evidence that Gadsden caused the transfers. *Huddleston*, 485 U.S. at 690. Evidence of the earlier ACH

subject to Rule 404(b). It provides the context necessary to understand the development of the conspiracy. *See Basham*, 561 F.3d at 326. It is also completes the story of how Gadsden embarked on the conspiracy. *See Siegel*, 536 F.3d at 316.

Gadsden claims that the evidence of the transaction would taint the jury's decisionmaking and should be excluded under Rule 403. ECF No. 141 at 3-4.

The prejudice from admitting this evidence does not substantially outweigh its probative value. *See* Rule 403. The amount of the earlier transfers is significantly less than that charged in the conspiracy. *Compare* ECF No. 120 at 3 (Housing Authority lost "a few thousand dollars" in initial transfers), *with id.* at 9 (describing $1.4 million dollars transferred). Given this disparity, it is unlikely that the jury would punish Gadsden for the initial transfers, for which he settled. As there is no reason to bar this evidence under Rule 403, Gadsden's motion will be denied.

    B.    Government's Motion in Limine to Introduce Evidence from Gadsden's Previous Trial

The government seeks to introduce from Gadsden's previous trial evidence that (1) Gadsden's then current cellphone number was 202-351-8102, (2) in March 2005, Gadsden made calls from

---

transactions is thus admissible under Rule 404(b). *See Siegel*, 536 F.3d at 317.

that number when he was allegedly engaged in criminal activity, and (3) the government used that phone's records in the previous trial. ECF No. 157 at 5. The government contends that Gadsden's awareness of the government's past use of his phone is why he used two "drop" phones in this conspiracy. See ECF No. 157. The government also wants to use evidence that cell site records were not provided to Gadsden or introduced against him at his previous trial. Id. at 6-7. It contends this information explains why Gadsden, although not *using* his phone during this bank fraud, carried it with him. Id. at 7.

The government argues that this information goes to prove Gadsden's identity, plan, motive, opportunity, preparation, knowledge, absence of mistake, and lack of accident. Id. at 6-7.

For admission under Rule 404(b), the three-part test of *Siegel* is used. Here, the government wishes to use this evidence for reasons other than to prove character. See Fed. R. Evid. 404(b)(2). The evidence is relevant to the context of the crime and explains Gadsden's use of the various cellphones. See *Byers*, 649 F.3d at 209. It is reliable because a reasonable jury could find that the phone records were used against Gadsden at the previous trial, but he was not told of the cell site data. See *Huddleston*, 485 U.S. at 690.

Although the evidence meets the requirements of 404(b), the Court must consider the prejudice to Gadsden from admission of this evidence from his prior trial. Rule 403 does not bar evidence of prior bad acts when conduct was not "any more sensational or disturbing than the crimes" with which the defendant is charged. *United States v. Boyd*, 53 F.3d 631, 637 (1995).

Bank robbery, unlike fraud, is a crime of violence. *See United States v. Hunt*, 187 F.3d 1269, 1270 (11th Cir. 1999); *see also United States v. Ketchum*, 550 F.3d 363, 367 (4th Cir. 2008). The prejudicial risk to Gadsden is high. Given the seriousness of bank robbery, it is likely that the jury may convict Gadsden for the robbery. *See United States v. Ham* 998 F.2d 1247, 1252-54 (4th Cir. 1993). The risk of prejudice and confusion of the issues substantially outweighs the probative value of the evidence that the government seeks to introduce; Rule 403 bars admission. *See United States v. Iskander*, 407 F.3d 232, 238 (4th Cir. 2005). The government's motion will be denied.

    C.   Government's Motion in Limine to Cross-Examine Gadsden with His False Statements

The government wishes to cross-examine Gadsden about his false exculpatory statements about the 2005 bank robbery. ECF No. 157 at 10. Despite Gadsden's denial of knowing

9

participation in the bank robbery, because he was using his cellphone during the robbery, the jury convicted Gadsden of aiding and abetting the robber. The government argued that the jury must not have believed Gadsden's statement, and at this trial his false statement is relevant to his credibility. *Id.* at 11.

"[A] defendant who chooses to testify on his own behalf subjects himself to legitimate and pertinent cross-examination to test his veracity and credibility." *United States v. Guay*, 108 F.3d 545, 552 (4th Cir. 1997). On cross-examination counsel may inquire into specific conduct if it is probative of truthfulness or untruthfulness of the witness. Fed. R. Evid. 608(b).[6]

If Gadsden testifies, his false statements about the bank robbery are "probative of truthfulness or untruthfulness."[7] The government's proposed cross-examination is permissible under Rule 608(b).

Impeachment under Rule 608(b) is subject to Rule 403's balancing test. *United States v. Custis*, 988 F.2d 1355, 1359 n.1 (4th Cir. 1993). Inquiry into the 2005 bank robbery risks

---

[6] The cross-examiner is bound by the witness's answer and cannot introduce extrinsic evidence to contradict the witness. *United States v. Ling*, 581 F.2d 1118, 1121 (4th Cir. 1978).

[7] Fed. R. Evid. 608(b); see *United States v. Garrett*, No. 11-4895, 2012 WL 3608706, at * 3 (4th Cir. Aug. 23, 2012).

significant prejudice to Gadsden. In the impeachment context, this risk is tempered by the government's inability to introduce extrinsic evidence to disprove Gadsden's testimony. *See Ling*, 581 F.2d at 1121. The government is cautioned not to violate Rule 403 by delving too deeply into the bank robbery. The government's motion will be granted.

   D.   Government's Motion to Admit the Post-Conspiracy
        Scheme

The government seeks to introduce post-conspiracy evidence under Rule 404(b). Such evidence must pass Rule 403's balancing test. *See United States v. Hawkins*, 589 F.3d 694, 705 (4th Cir. 2009).

"The government is not required to provide cumulative evidence on each point." *United States v. Flanagan*, 34 F.3d 949, 953 (10th Cir. 1994). Rule 403 allows the Court to bar potentially probative evidence if it is needlessly cumulative; this evidence is. *See* Fed. R. Evid. 403.

Admission of post-conspiracy evidence would risk significant confusion of the issues. The jury has already expressed its confusion about directly relevant evidence. Post-conspiracy evidence would exacerbate the confusion. "The marginal relevance and the risk of delay and confusion created by a mini-trial to explain the evidence" weighs against admitting the evidence. *United States v. Jimenez*, 513 F.3d 62, 76 (3d Cir.

2008). Introduction of the post-conspiracy evidence would "pose[] the danger of confusion of the issues, which may tend to mislead the jury and would otherwise cause delay and waste time." *Id.* The government's motion will be denied.

III.   Conclusion

For the reasons stated above, Gadsden's motion in limine to exclude evidence of the settled transfers will be denied, and the government will not be permitted to introduce evidence about the 2005 bank robbery trial. The government's motion to introduce evidence about the post-conspiracy scheme will also be denied. The government's motion in limine to cross-examine Gadsden on his false exculpatory statements will be granted.

_____10/4/12_____          _____
Date                         William D. Quarles, Jr.
                             United States District Judge