IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA

v.

DAREN KAREEM GADSDEN

CRIMINAL NO.: WDQ-11-0302

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Daren Kareem Gadsden is charged with 13 counts of bank fraud and related crimes. On July 15, 2013, the Court heard argument on Gadsden's continued detention and pending motions.

I. Detention

Gadsden sought review of his pretrial detention. ECF No. 232. Two Magistrate Judges and this Court have previously ordered Gadsden's continued detention, primarily on the ground that he is a danger to the community.[1] The Court agreed with the Magistrate Judges, and affirmed and adopted their findings of

---

[1] On December 22, 2011, Magistrate Judge William Connelly ordered Gadsden detained after his initial appearance on the Second Superseding Indictment, finding Gadsden was a flight risk and a danger to the community. ECF No. 64. Judge Connelly denied reconsideration after Gadsden was arraigned on the Third Superseding Indictment. See Feb. 3, 2012, Docket Entry. On October 15, 2012, after the mistrial was declared, the Court, which had heard many days of testimony, denied Gadsden's request for release. On April 30, 2013, Magistrate Judge Timothy J. Sullivan ordered Gadsden's continued detention, finding him a danger to the community. ECF No. 227.

Gadsden's danger to the community. The Court also held that--given the majority of the jurors in the last trial voted to convict the defendant--there is a substantial risk of flight. Gadsden's motion for review of the detention order will be denied, and his various motions for reconsideration will be denied as moot.

II. Gadsden's Motions

   A.   Motion to Adopt

Gadsden moves to adopt his motions from the first trial. ECF No. 216. The government has not opposed. Accordingly, the motion will be granted as to adoption, and denied to the extent the previous motions were denied.

   B.   *Pro Se* Motion to Dismiss for Speedy Trial Violations

Gadsden, *pro se*, asserts that delaying the retrial until July 2013 violates his rights under the Speedy Trial Act, 18 U.S.C. § 3162. ECF No. 222. He also claims that he didn't give consent to the consent speedy trial exclusion motion. Id. The government asserts that the Court properly excluded time. ECF No. 261 at 6.

In granting the motion to exclude time, the Court made specific factual findings for the exclusion. See 18 U.S.C. § 3161(h); ECF No. 209. Appointed counsel consented to the motion on behalf of Gadsden. ECF No. 208. This is sufficient for

tolling of the speedy trial clock.[2] Accordingly, there is no basis to dismiss under the Speedy Trial Act.

Reading his motion liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), Gadsden has also asserted his Sixth Amendment right to a speedy trial. See ECF No. 222. To show a Sixth Amendment violation, the defendant must show that the four factors of *Barker v. Wingo*, 407 U.S. 514 (1972) weigh in his favor: "(1) whether the delay was uncommonly long; (2) what the reason was for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant." *United States v. Shealey*, 641 F.3d 627, 634 (4th Cir. 2011).

"[T]he first *Barker* factor involves two aspects. First of all, a reviewing court must decide whether the length of the delay triggers a speedy trial inquiry. . . . Second, a reviewing court must weigh the extent to which the delay stretches beyond

---

[2] *See United States v. Gates*, 709 F.3d 58, 66 (1st Cir. 2013) ("[I]n the ordinary course and within the confines of the [Speedy Trial Act] exclusion provisions, defense counsel has the power to seek an STA continuance without first informing his client or obtaining his client's personal consent."); *United States v. Bryant*, 134 F.3d 364 (table), 1998 WL 39393, at *3 (4th Cir. 1998) (holding that when defendant does not seek new counsel or to proceed *pro se*, the court is entitled to assume that "counsel spoke for" the defendant in Speedy Trial Act continuances); *see also New York v. Hill*, 528 U.S. 110, 115 (2000) (holding that counsel can waive speedy trial right under Interstate Agreement on Detainers for client, stating "[a]bsent a demonstration of ineffectiveness, counsel's word on such matters is the last").

3

the bare minimum needed to trigger judicial examination of the claim." *United States v. Hall*, 551 F.3d 257, 271 (4th Cir. 2009) (citations and internal quotation marks omitted). A delay of one year generally triggers a full *Barker* inquiry. *See id.* (*citing Doggett v. United States*, 505 U.S. 647, 651-52 & n.1 (1992)).

The Fourth Circuit has held that the time period for the *Barker* inquiry is from the first indictment in a judicial district to the retrial. *See Hall*, 551 F.3d at 272. On December 21, 2011, Gadsden was first indicted and he had his initial appearance the next day. ECF Nos. 52, 60. As the July 15, 2013 retrial is over a year and half later, the full *Barker* analysis is necessary. *See Hall*, 551 F.3d at 272.

The second factor is the reasons for the delay. There is no evidence of any prosecutorial misconduct; rather, the delay is based on the initial mistrial, the complexity of the conspiracy charge, the appointment of new counsel, and the time necessary for new counsel to review the 9,000 pages of documents underlying the charges and the transcript of the previous nine-day trial. Accordingly, this factor favors the government. *See Hall*, 551 F.3d at 272.

"The third *Barker* factor is whether the Defendant[] made a timely assertion of [his] speedy trial rights." *Hall*, 551 F.3d

at 272. Gadsden has timely asserted his right to a speedy trial. See ECF No. 222; *Hall*, 551 F.3d at 272.

For prejudice, there are "three defense interests for consideration: (1) whether there was an oppressive pretrial incarceration; (2) the anxiety and concern suffered by the accused; and (3) the possibility that the defense was impaired." *Hall*, 551 F.3d at 272. Gadsden has not asserted that his detention has been oppressive. Rather, his repeated requests for review of the detention order have been fueled by his assertion--which numerous judges have rejected--that he is not a danger to the community. *Supra* Part I. For the second interest, Gadsden has not identified "'any restraint on liberty, disruption of employment, strain on financial resources, [or] exposure to public obloquy' that was greater than that faced by 'anyone openly subject to criminal investigation.'" *Hall*, 551 F.3d at 272 (quoting *United States v. MacDonald*, 456 U.S. 1, 9 (1982)).

Finally, there is no evidence that the defense has been impaired. At the hearing, his appointed counsel conceded that the delay has had no prejudicial effect on the defense.[3] *See Hr'g*. Accordingly, Gadsden has not shown prejudice or

---

[3] Gadsden asserted that he wanted to call several additional witnesses, and implies that their memories have diminished. Appointed counsel has stated that he will not call these witnesses in Gadsden's defense. *Hr'g*.

entitlement to relief under *Barker*. The motion to dismiss for speedy trial violations will be denied.

C.   *Pro Se* Motion to Dismiss for Due Process Violations

Gadsden, *pro se*, seeks dismissal of the indictment asserting that the government knowingly introduced coconspirator William Darden's false testimony. ECF No. 220. Under *Napue v. Illinois*, 360 U.S. 264 (1959), a due process violation "requires a showing of the falsity and materiality of testimony and the prosecutor's knowledge of its falsity." *Basden v. Lee*, 290 F.3d 602, 614 (4th Cir. 2002). As the government correctly notes, a *Napue* claim is generally brought post-conviction. *See* ECF No. 261 at 3-4; *see also Napue*, 360 U.S. at 269 ("First, it is established that a *conviction* obtained through the use of false evidence, known to be such by representatives of the State, must fall under the Fourth Amendment." (emphasis added)) The Court has found no authority in which a *Napue* claim led to dismissal of the indictment.[4] Accordingly, Gadsden is not entitled to relief. The motion will be denied.

---

[4] *See Leighton v. Scribner*, No. CV 08-4552-GW(RNB), 2009 WL 6441470, at *12 (C.D. Cal. Dec. 4, 2009) (finding no such cases); *see also United States v. Kohring*, 637 F.3d 895, 913 (9th Cir. 2010) (vacating conviction and remanding for new trial for *Brady/Giglio* violations with brief *Napue* discussion, but refusing to dismiss indictment because no evidence prosecution "acted flagrantly, willfully, and in bad faith" (internal quotation marks omitted)); *United States v. Barham*, 608 F.2d 602 (5th Cir. 1979) (affirming refusal to dismiss indictment after reversal of convictions for *Napue* violation).

D.   *Pro Se* Motion to Dismiss for Lack of Evidence

Gadsden, *pro se*, seeks dismissal of each count in the indictment because the government did not adduce sufficient evidence to convict him at the first trial. ECF No. 271 (SEALED). The authorities cited by Gadsden concern the sufficiency of the evidence or the elements necessary for conviction.[5] To the extent the evidence is insufficient to convict Gadsden of the charges against him, the remedy is acquittal, not dismissal of the indictment.[6] *See United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000) ("Unless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence."). The motion will be denied.

E.   *Pro Se* Motion to Suppress

Gadsden, *pro se*, seeks to suppress (1) evidence from DarenGadsden@gmail.com, (2) photos of his vacation with Ronita Snowdy in Turks and Caicos, (3) photos of his home, and (4) his personal and business bank records. ECF No. 219. He asserts

---

[5] *See United States v. Flores-Figuerora*, 556 U.S. 646 (2009) (stating elements for aggravated identity theft); *United states v. Davis*, 989 F.2d 244 (7th Cir. 1993) (defrauding the IRS and depositing a check is not defrauding the bank); *United States v. Bales*, 813 F.2d 1289 (4th Cir. 1987) (finding sufficient evidence for bank fraud conviction).

[6] Gadsden has not asserted that the alleged offenses do not describe crimes.

7

that none of this evidence is relevant, and the government improperly obtained the email and banking records. *Id.* Gadsden's claims can be addressed only within the context of the trial. Accordingly, his blanket motion for preclusion will be denied. He may make appropriate objections at trial.

    F.    *Pro Se* Motion for Discovery

Gadsden seeks various materials under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150, the Jencks Act, 18 U.S.C. § 3500, and Fed. R. Crim. P. 16, 26.2. ECF No. 272 (SEALED). The government appears to have been diligent in providing discovery material to the defense. *See* ECF No. 270. At trial, appointed counsel confirmed that the government has complied with its discovery obligations. The motion will be denied.

III. Government's Motions

    A.    Motion *in limine* About Other Frauds

The government seeks to introduce evidence of additional bank fraud conspiracies Gadsden with Darden committed after the charged offenses.[7] ECF No. 236. Gadsden asserts that the evidence would confuse the jury and prejudice his offense. ECF No. 248. The government has not replied. The Court denied a

---

[7] It appears these schemes used ACH transfers like the instant conspiracy through business entities known as John Boy Maintenance LLC, Mark Gerald Contracting LLC, and Roman Jones Export LLC. ECF No. 236.

similar motion at the first trial under Rule 403. *See* ECF Nos. 176, 177. The government acknowledges that it is asking the Court to reconsider the previous ruling. ECF No. 236 at 1 n.1.

Extrinsic evidence of other bad acts is admissible under Rule 404(b) if "(1) relevant to an issue other than character; (2) necessary; and (3) reliable." *United States v. Siegel*, 536 F.3d, 306, 317 (internal quotation marks omitted). "Evidence is necessary whe[n] it is an essential part of the crimes on trial, or whe[n] it furnishes part of the context of the crime." *United States v. Byers*, 649 F.3d 197, 209 (4th Cir. 2011) (internal quotation marks omitted). Evidence of prior bad acts is reliable if a jury could reasonably find, by a preponderance of the evidence, that the act was committed by the defendant. *Huddleston v. United States*, 485 U.S. 681, 690 (1988); *United States v. Hadaway*, 681 F.2d 214, 218 (4th Cir. 1982). "Additionally, the probative value of the evidence must not be substantially outweighed by the danger that it will cause unfair prejudice." *United States v. Hodge*, 354 F.3d 305, 312 (4th Cir. 2004) (*citing* Fed. R. Evid. 403).

The government asserts that it would use this evidence to show Gadsden's identity, corroborate Darden's testimony about the fraud in the case, and establish "motive, opportunity, intent, preparation, plan, knowledge, . . . absence of mistake, [and] lack of accident." ECF No. 236 at 5-6 (*quoting* Fed. R.

Evid. 404(b)). Despite this otherwise permissible use, this evidence will again be barred under Rule 403.

"The government is not required to provide cumulative evidence on each point." *United States v. Flanagan*, 34 F.3d 949, 953 (10th Cir. 1994). Rule 403 allows the Court to bar potentially probative evidence if it is needlessly cumulative; this evidence is. *See* Fed. R. Evid. 403.

Admission of post-conspiracy evidence would also risk significant confusion of the issues. The jury at the first trial expressed confusion about directly relevant evidence, and it is likely that this jury will also have a sufficiently difficult task weighing the directly relevant evidence in this trial. "The marginal relevance and the risk of delay and confusion created by a mini-trial to explain the evidence" weighs against admitting the evidence. *United States v. Jimenez*, 513 F.3d 62, 76 (3d Cir. 2008). Introduction of the post-conspiracy evidence would "pose[] the danger of confusion of the issues, which may tend to mislead the jury and would otherwise cause delay and waste time." *Id.*

Additionally, this evidence would likely unfairly prejudice Gadsden. Appointed counsel "relied on the Court's ruling in representing" Gadsden; accordingly, he asserts that it would take a significant amount of time to investigate these additional charges, and it would be unfair so close to trial.

10

ECF No. 248. Because the probative value is substantially outweighed by the unfair prejudice, confusion of the evidence, and cumulative evidence, the motion will be denied.[8]

B. Motion *in limine* to Exclude Prior Convictions

The government seeks to exclude two prior convictions of co-conspirator Tyeast Brown under Fed. R. Evid. 609: (1) a December 16, 1998 conviction for possession with intent to distribute narcotics, and (2) theft-$300 value on the same date.[9] ECF No. 256 at 1. She was sentenced to probation for both offenses. *Id.* Gadsden opposes the motion. ECF No. 273.

Rule 609 permits impeachment through evidence of conviction of a crime for an offense punishable by imprisonment of more than one year, subject to Rule 403. Fed. R. Evid. 609(a)(1). Any crime involving "a dishonest act or false statement" must be admitted. Fed. R. Evid. 609(a)(2). However, evidence of a conviction can generally only be admitted if less than ten years

---

[8] In a footnote, the government also asks the Court to "confirm the continued applicability of its ruling regarding the government's ability 'to cross-examine [Gadsden] on his false statements to police in connection with [his] 2005 bank robbery.'" ECF No. 236 at 1 n.1. To the extent this is a motion, the Court will defer ruling until the issue arises at trial.

[9] Brown was also charged but not convicted on several other charges. ECF No. 256 at 1. As Rule 609 only permits admission of convictions, they are not relevant.

have elapsed since the conviction or release from confinement.[10] Fed. R. Evid. 609(b). After ten years, evidence of a conviction is only admissible if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect" and "the proponent gives an adverse party reasonable written notice of the intent to use it." *Id.*

Courts should admit stale convictions "very rarely and only in exceptional circumstances."[11] *United States v. Beahm*, 664 F.2d 414, 417 (4th Cir. 1981).

---

[10] Gadsden asserts that the Rule 609(b) time restriction does not apply to Rule 609(a)(2) crimes, and, although unclear, the government appears to follow the same analysis. *See* ECF Nos. 256 at 4, 273 at 2. The parties are incorrect. The Rule 609(b) time limit applies to all of Rule 609(a), including Rule 609(a)(2) crimes. *See, e.g., United States v. Lapteff*, 160 F. App'x 298, 303 (4th Cir. 2005); *United States v. Payton*, 159 F.3d 49, 56-57 (2d Cir. 1998) ("Rule 609(b) . . . imposes a time restriction of ten years on the admissibility of evidence under Rule 609(a)(2)"); *Salmons, Inc. v. First Citizens Bank & Trust Co.*, Civ. No. 2:10cv72, 2011 WL 4828838, at *1 (E.D. Va. Oct. 11, 2011).

[11] The proponent of the conviction "bears the burden of establishing specific, or articulated, facts and circumstances that support the probative value of the conviction such that it substantially outweighs its prejudicial impact." *Id.* at 418. Courts consider five factors in deciding balancing the probative value against the prejudice of convictions: "(i) the impeachment value of the conviction, (ii) its immediacy or remoteness, (iii) the degree of potential prejudice it portends, (iv) the importance of that witness' testimony and (v) the salience of the credibility issue in the circumstances of the particular case." *Salmons*, 2011 WL 4828838, at *2 (*citing United States v. Brito*, 427 F.3d 53, 64 (1st Cir. 2005)); *see also United States v. Alexander*, 48 F.3d 1477, 1488 (9th Cir. 1995).

12

The impeachment value of these convictions appears to be low; although the circumstances of the individual convictions are not before the Court, they appear to be run of the mill offenses--particularly in light of Brown's sentence of probation. Similarly, drugs and theft are not closely related to sophisticated bank fraud, diminishing their probative value. *See Brito*, 427 F.3d at 64. Both offenses are relatively remote as the convictions were entered nearly 15 years ago.

On the other hand, the potential prejudice is also low. Brown will likely have significant credibility issues. At the first trial Brown freely admitted her drug problems and lying and stealing when necessary. *See* ECF No. 214 at 40, 57. She has already pled guilty and been sentenced for the instant conspiracy.

Gadsden implies that Brown's testimony is a key part of the government's case in tying him to the other conspirators. *See* ECF No. 273 at 1. The government has not directly addressed this position. *Cf.* ECF No. 256. Gadsden is correct that Brown will likely provide significant testimony in this case, but there is significant other evidence that directly ties Gadsden to the conspiracy or from which the jury can infer his involvement. Although the credibility of the co-conspirators is relevant in this case, it is not the greatest part of the

evidence, given the vast number of documents involved; this diminishes the necessity of reliance on Brown's testimony.

The prejudicial effect and probative value of Brown's convictions are low. It is unclear whether this is one of those rare and exceptional circumstances when the probative value substantially outweighs the prejudicial effect. *See Beahm*, 664 F.2d at 417. Accordingly, the Court will defer ruling on this motion so that the motion can be considered in the context of the evidence at trial.

IV. Conclusion

For the reasons stated above, Gadsden's motion to adopt his previously filed motions will be granted in part and denied in part. His motions (1) for review of the detention order, (2) to suppress evidence, (3) to dismiss the indictment for due process violations, (4) to dismiss the indictment for speedy trial violations, (5) to dismiss the indictment for lack of evidence, and (6) for discovery will be denied. His motions for reconsideration of his detention will be denied as moot.

The government's motion *in limine* to admit evidence of additional bank fraud conspiracies will be denied. The Court will defer ruling on the government's motion *in limine* to preclude evidence of Brown's convictions.

7/17/13
Date

William D. Quarles, Jr.
United States District Judge