IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Petitioner,

    v.                 CRIMINAL NO.: WDQ-11-0302

DAREN KAREEM GADSDEN,

    Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

    Following a jury trial, Daren Kareem Gadsden was convicted
of bank fraud, identity theft, and evidence tampering. Pending
are: (1) Gadsden's motions for a judgment of acquittal, ECF Nos.
291, 295, 306; (2) the government's motion to strike Gadsden's
*pro se* motion, ECF No. 294; and (3) the government's motion for
leave to file a surreply, ECF No. 311. No hearing is necessary.
Local Rule 105.6 (D. Md. 2012). For the following reasons,
Gadsden's motions for a judgment of acquittal will be denied,
and the government's motions will be denied as moot.

I. Background[1]

    Gadsden was a landlord for a low-income person who
qualified for rental assistance under the Housing Authority of

---

[1] The facts are taken from the trial transcripts. When reviewing
a motion for judgment of acquittal based on the sufficiency of
the evidence, the facts are viewed in the light most favorable
to the government. *United States v. Harvey*, 532 F.3d 326, 333
(4th Cir. 2008).

Baltimore's ("Housing Authority") Section 8 program. 1613x1[2] at 34. The Housing Authority disbursed rental payments to Section 8 landlords from its bank account at Bank of America. *See id.* at 37-38. In early 2010, the Housing Authority lost several thousand dollars from its Bank of America account in unauthorized Automated Clearing House ("ACH") transactions. *Id.* at 37. These Housing Authority funds were deposited into an account held by Daren Gadsden, LLC. *Id.* at 36-37; 1813ra at 43. When confronted about the losses, Gadsden denied wrongdoing but settled the claims for $1,400.[3] 1613x1 at 47-48.

In spring 2010, Gadsden contacted Tyeast Brown to recruit her for a scheme to steal additional money from the Housing Authority using unauthorized ACH transfers. *See* 1713n2ra at 70-73. Brown brought William Darden and Keith Daughtry into the conspiracy. *See id.* at 73-74. Daughtry consented to Gadsden's use of his personal information to create a fraudulent driver's

---

[2] The trial transcripts have not yet been filed on the Court's docket. Citations to "1613x1" (full file name - fc071613x1) and "1513x1" (fc071513x1) refer to official transcripts of selected trial testimony. Citations to "1513ra" (fc071513ra), "1613ra" (fc071613ra), "1713n2ra" (fc071713n2ra), "1813ra" (fc071813ra), and "1913ra" (fc071913ra) refer to the unofficial trial transcripts.

[3] A Housing Authority employee testified that she had ordered an ACH block placed on the Housing Authority account to prevent future unauthorized transfers after this incident. 1613x1 at 77-78. This block was not put in place, however, until after Gadsden and his co-conspirators made over a million dollars in additional unauthorized withdrawals. *Id.*

2

license with Darden's picture on it. *Id.* at 73-76, 78. On May 19, 2010, Gadsden registered Keith Daughtry Contracting, LLC ("Daughtry LLC") with the Maryland Department of Assessments and Taxation. *See* 1813ra at 27, 117-18, 232-33.[4] On May 25, 2010, Darden opened a bank account at PNC Bank for the Daughtry LLC. 1613ra at 269-73; 1713n2ra at 78, 125. Gadsden registered the Daughtry LLC bank account in the ACH network. *See* 1613ra at 276; 1813ra at 17. Using the ACH, Gadsden then transferred funds from the Housing Authority bank account to the Daughtry LLC account. 1813ra at 63, 129.

Gadsden also stole the identity of James Fisher, who was not involved in the scheme. *See* 1613ra at 157-61; 1813ra at 14-15. He obtained a driver's license in Fisher's name, 1813ra at 14-15; he incorporated James Fisher Consulting, LLC ("Fisher LLC") with the District of Columbia,[5] 1613ra at 136; 1713n2ra at 160-61; and he opened a bank account at Bank of America for the Fisher LLC, 1613ra at 137-38. Gadsden enrolled Fisher LLC in the ACH system by submitting a fraudulent consulting agreement between Fisher LLC and the Housing Authority. *See* 1613ra at 141-42; 1613x1 at 58-64. Fisher LLC received several thousand

---

[4] Gadsden listed Mark Gerald as the agent for the Daughtry LLC. *See* 1813ra at 28. Gadsden had stolen Gerald's identity, using Gerald's personal identifying information to further the bank fraud. *See* 1513x1 at 33; 1713n2ra at 9-12.

[5] To incorporate Fisher LLC, Gadsden fraudulently used Fisher's and Gerald's identities. *See* 1613ra at 136-37.

3

dollars in unauthorized ACH transfers from the accounts of the Housing Authority and Daughtry LLC. *See* 1613x1 at 58-59; 1813ra at 17-18.

Brown recruited several people to buy NetSpend debit cards,[6] which received funds through the ACH from the Daughtry LLC account during the summer of 2010. 1613ra at 184; 1713n2ra at 113-14, 117. NetSpend cards were opened in the names of Fisher, Gerald,[7] and Daughtry, among others. 1613ra at 186-87; 1813ra at 121-22. Gadsden and Brown periodically checked the account balances on the debit cards using their phones. 1613ra at 227-29; 1713n2ra at 111-13. They used the cards to withdraw funds from the accounts at automated teller machines ("ATMs") and make purchases.[8] 1713n2ra at 85-86. Almost $704,000 was transferred onto 54 debit cards from the Daughtry LLC account. 1613ra at 188.

---

[6] Most of these NetSpend cards were purchased at ACE Check Cashing stores. 1613ra at 188. NetSpend cards are prepaid debit cards issued by banks and are not tied to credit accounts. *Id.* at 179. Account holders can load money on them from, *inter alia*, ACH deposits. *Id.*

[7] DKGCredit1@gmail.com was listed as the contact email address for the Mark Gerald NetSpend card. 1813ra at 112. Gadsden's initials are "DKG" and Gadsden's phone number was associated with the website www.DKGcredit.com. *Id.* at 113.

[8] The Daughtry and Fisher debit cards were used for withdrawals and purchases that corresponded with Gadsden's travels to Las Vegas and Atlanta. 1813ra at 111-12, 125-26, 237-40.

4

Brown's recruits would also open bank accounts or ACE check cashing accounts to receive transfers of money from the LLC accounts. *See* 1713n2ra at 80-81. Brown and Darden would travel to the banks and the ACE locations with her recruits who would withdraw money from their accounts. *See id.* Each recruit kept roughly one-third of the withdrawn money, Gadsden kept another third, Brown would give some of the remainder to Darden, and she would keep the rest. *See id.* at 82-83.

The conspirators obtained almost $1.4 million from the Housing Authority account through unauthorized ACH transfers. *See* 1613x1 at 32, 67.

In April 2011, FBI Special Agent Bradford Lynch visited Gadsden's home and left his business card, requesting that Gadsden contact him. 1813ra at 63-64. On April 14, 2011, Gadsden called Agent Lynch, and Agent Lynch told Gadsden he wanted to speak to him about a bank fraud investigation. *Id.* at 64-65. On April 16, 2011, two days after he spoke with Agent Lynch, the email account DKGcredit1@gmail.com was deleted. *Id.* at 66-67, 112. On April 21, 2011, a week after he spoke with Agent Lynch, the email account JamesFisherConsulting@gmail.com, another email associated with the fraud, was deleted.[9] *Id.* at

---

[9] This email was used as the contact email address on the Fisher NetSpend card and for the Fisher LLC. 1613ra at 131-32, 194.

67, 117.  The person who deleted the two email accounts had the same I.P. address as was used to login to DarenGadsden@gmail.com, Gadsden's personal email address.[10]  *See* 1713n2ra at 37-42.

On May 2, 2012, Gadsden was indicted on:[11]  (1) one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349; (2-9) eight counts of bank fraud in violation of 18 U.S.C. § 1344; (10-11) two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) & (c)(5); and (12-13) two counts of attempted evidence tampering in violation of 18 U.S.C. § 1512(c)(1).  ECF No. 120 at 4-5, 10-13, 15-16.  He pled not-guilty and retained Arthur Reynolds, Jr., Esquire, to defend him.  ECF Nos. 72, 127.

On October 1-15, 2012, Gadsden had a jury trial.  The jury could not reach a verdict, and a mistrial was declared.  ECF No. 186, 192 at 1.  Gadsden could not afford to retain Reynolds for

---

[10] The government offered evidence that this email address was used to purchase, among other things, a plane ticket to Turks and Caicos.  *See* 1813ra at 100-01.  Gadsden's travel companion testified that Gadsden had booked the tickets and gone to Turks and Caicos with her.  1713n2ra at 18-22.  The government also offered evidence that the Gmail account was associated with Gadsden's phone number.  *Id.* at 38.

[11] The original indictment was filed on June 1, 2011 and superseded twice.  ECF No. 1.  The counts discussed are charges against Gadsden from the Third Superseding Indictment.  ECF No. 120.

his re-trial, ECF No. 203, so David W. Fischer, Esquire, was appointed to defend him, ECF No. 198.

Following a motions hearing,[12] on July 15-22, 2013, Gadsden had a second jury trial. The government called the former Housing Authority Inspector General, Christa Phillips, 1613x1 at 34, 66-67, PNC Bank Investigator, Michael Hersh, 1513x1 at 2-3, 31-32, NetSpend and ACH employees, 1613ra at 129-31, 178, 186-87, a tax preparer,[13] and Agent Lynch, 1813ra at 10-12, to testify about the conspiracy and the resulting losses to its victims.[14] Brown and Darden testified about their, and Gadsden's, participation in the conspiracy. *See, e.g.*, 1613ra

---

[12] On July 19, 2013, Gadsden appealed *pro se* the Court's denial of his motions to dismiss the indictment, for discovery, for judgment of acquittal, to suppress, and to hold an evidentiary hearing on certain bank records. ECF Nos. 292, 313. On October 1, 2013, the Fourth Circuit dismissed the appeal for lack of jurisdiction, because the orders denying the motions were interlocutory. ECF No. 313 at 2.

[13] Elliot Robinson, the owner of a Liberty Tax Service franchise, testified that Gadsden came to his store, claimed to be James Fisher, and requested that Robinson prepare a tax return for Fisher. 1613ra at 90, 92, 94-95. Robinson attempted to prepare a tax return, but the return was rejected because one had already been filed for Fisher. *Id.* at 94-95.

[14] For example, Hersh testified that Bank of America was forced to make "returns" to a customer, and that PNC was the "ultimate victim," because it only recovered a portion of the $1.4 million it reimbursed to the Housing Authority from other banks. 1513x1 at 5; 1613x1 at 32. Agent Lynch, *inter alia*, testified about the documents Gadsden needed to acquire to set up the phony LLCs (including corporate charter documents) and obtain bank accounts for them. *See* 1813ra at 118.

at 247, 260; 1713n2ra at 59-60. James Fisher and Mark Gerald's mother testified about personal identifying information that was stolen. 1613ra at 155-58; 1713n2ra at 5, 11-12.[15] A Google employee testified about the deletion of the DKGCredit1 and JamesFisherConsulting Gmail accounts. 1713n2ra at 32, 40-43. Finally, a Baltimore police detective was qualified as an expert to testify about cell site data[16] obtained from phone numbers associated with the conspiracy.[17] *See* 1813ra at 209-10, 215-17.

At the close of the government's case, Fischer moved for a judgment of acquittal, which the Court denied. 1813ra at 262, 270-71. Fischer did not offer any witnesses in Gadsden's defense. *See, e.g.*, 1813ra at 245-46. The jury found Gadsden guilty of all 13 counts of the indictment. ECF No. 287.

On July 29, 2013, Gadsden filed a *pro se* motion for a judgment of acquittal. ECF No. 291. On July 30, 2013, the government moved to strike the motion and opposed it on the

---

[15] Theresa Simmons also testified that her identity was stolen and a bank account that received transfers of money from the Daughtry LLC account was opened in her name. *See* 1813ra at 199-201.

[16] Cell site data provide the rough location of a cell phone at a given time based on the location of the closest cell tower that relayed the cell phone call or sent a text message. *See* 1813ra at 205-09.

[17] The government also called two friends of Gadsden's who testified, *inter alia*, that he had called them using phone numbers associated with the bank fraud scheme and identified the car he drove. 1713n2ra at 18, 25, 29, 191-93, 196.

merits. ECF No. 294. On July 31, 2013, Gadsden filed an amended *pro se* motion for a judgment of acquittal. ECF No. 295. On August 5, 2013, Gadsden moved, through counsel, for a new trial and for a judgment of acquittal. ECF No. 297. In this motion, Fischer stated that he could not yet fully brief the Court on the grounds for the motion until he received the trial transcripts. *Id.* at 2. On August 6, 2013, the Court ordered Gadsden to file a supplemental memorandum to support his motions by September 4, 2013. ECF No. 298.

On September 4, 2013, Gadsden, through counsel, filed a memorandum of law to supplement his prior motions. ECF No. 306. On September 10, 2013, the government responded to this memorandum. ECF No. 308. On September 24, 2013, Gadsden replied. ECF No. 309. On September 29, 2013, the government moved for leave to file a surreply. ECF No. 311. On October 1, 2013, Gadsden, through counsel, opposed the motion. ECF No. 312. On October 5, 2013, the government replied. ECF No. 315.

II. Analysis

A. Legal Standard

Gadsden argues that the evidence was insufficient to sustain his convictions, and the verdict was against the weight of the evidence.[18] Federal Rules of Criminal Procedure 29 and 33

---

[18] ECF No. 297 at 1-2. Gadsden also "reasserts each and every ground previously set forth" in motions and objections at trial.

govern motions for judgment of acquittal and new trial, respectively. Although the motions may be combined, they are governed by different standards.

A motion under Rule 29 challenges the sufficiency of the evidence to support the conviction. The Court must determine whether, "viewing the evidence in the light most favorable to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." *Harvey*, 532 F.3d at 333 (internal citation and quotation marks omitted). This creates a heavy burden for the defendant. *United States v. Tran*, 458 F. App'x 293, 295 (4th Cir. 2011). "Reversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear," after considering "*all* of the evidence admitted at trial." *Id.* (*quoting United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation marks omitted)); *United States v. Mackins*, 32 F.3d 134, 137-38 (4th Cir. 1994) (emphasis in original).

"Rule 33 allows a district court to grant a new trial in the interest of justice." *United States v. Arrington,* 757 F.2d 1484, 1485 (4th Cir. 1985); *see* Fed. R. Crim. P. 33. One basis for granting a new trial under Rule 33 is that the jury's

---

*Id.* at 2. To the extent that Gadsden has provided no grounds for reconsidering these arguments, the Court affirms its earlier rulings. The Court will consider only those arguments briefed.

verdict was against the weight of the evidence. *Arrington,* 757
F.2d at 1485. When a defendant raises this argument under Rule
33, "the court's authority is much broader" than it is under
Rule 29. *Id.* The court "is not constrained by the requirement
that it view the evidence in the light most favorable to the
government," and it may evaluate the credibility of witnesses.
*Id.* This discretion, though broad, should be exercised
"sparingly;" a new trial should be granted "only when the
evidence weighs heavily against the verdict." *United States v.*
*Perry,* 335 F.3d 316, 320 (4th Cir. 2003) (*quoting United States*
*v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997) (internal quotation
marks omitted)).

    B. Bank Fraud Counts

      1. Legal Standard

Gadsden was convicted of eight counts of bank fraud under
§ 1344, which provides that:

> [w]hoever knowingly executes, or attempts to execute, a
> scheme or artifice--
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets,
> securities, or other property owned by, or under the
> custody or control of, a financial institution, by means
> of false or fraudulent pretenses, representations, or
> promises;
> shall be fined not more than $1,000,000 or imprisoned not
> more than 30 years, or both.

11

A person can commit bank fraud under § 1344 by violating either subsection, because they proscribe different conduct. *United States v. Brandon*, 298 F.3d 307, 311-12 (4th Cir. 2002) (*citing United States v. Colton,* 231 F.3d 890, 897 (4th Cir. 2000)). To prove a violation of either subsection, the government must establish that: (1) the defendant intended to defraud; and (2) the victim financial institution was insured by the Federal Deposit Insurance Corporation ("FDIC"). *See United States v. Brandon*, 150 F. Supp. 2d 883, 884-85 (E.D. Va. 2001) *aff'd,* 298 F.3d 307 (4th Cir. 2002).[19]

2. *Pro Se* Arguments

In his *pro se* motions, Gadsden contends that he is entitled to a judgment of acquittal, because the government failed to prove "that Bank of America, Net[S]pend Corporation, ACE Cash [E]xpress, The Baltimore Housing Authority or Maryland Taxation Department was [i]nsured by the [FDIC]," ECF No. 295 at 1, or that any of these institutions was an "intended victim, took a loss or was exposed to some form of liability as a result of the fraud," ECF No. 291 at 2. The government asserts that the Local Rules prohibit the Court from accepting *pro se* filings on behalf

---

[19] *See also Brandon*, 298 F.3d at 311-12; *United States v. Brandon*, 17 F.3d 409, 426 (1st Cir. 1994); *United States v. Leahy*, 445 F.3d 634, 645 (3d Cir. 2006).

of defendants represented by counsel, and that the motion is otherwise meritless. ECF No. 294 at 1-2.

"Although there is a paucity of Fourth Circuit precedent directly addressing this issue, every Circuit Court of Appeals to have considered the phenomenon of a *pro se* motion filed by a represented party has determined that a court does not have to accept or entertain these motions." *United States v. White*, No. 7:08-CR-00054, 2010 WL 1462180, at *1 (W.D.Va. Apr. 12, 2010).[20] The Local Rules of this Court also prohibit the Clerk of the Court from accepting *pro se* filings by represented parties. Local Rule 102.1(a)(i) (D. Md. 2012). Accordingly, because the Local Rules prohibit his filings, and because Gadsden has filed a motion for a judgment of acquittal through counsel, the Court will decline to consider Gadsden's *pro se* motions.

3. Motion Through Counsel

Through counsel, Gadsden contends that he is entitled to a judgment of acquittal, because the government failed to prove that Bank of America was an intended victim of bank fraud.[21] The

---

[20] *See also United States v. Johnson*, 464 F. App'x 175, 177 (4th Cir. 2012) (unpublished disposition) ("Because [defendant] is represented by counsel on appeal, we deny his motion for leave to file a pro se supplemental brief.").

[21] Gadsden contends that the government had to prove that Bank of America and PNC Bank were intended or actual victims of bank fraud, because the indictment identifies them as victims. ECF No. 306 at 3-4. Paragraph 19 of the indictment, which Gadsden identifies as creating the requirement that the government prove

government asserts that, although § 1344(1) requires the government to prove the victim financial institutions actually suffered a financial loss or were exposed to a potential loss, § 1344(2), which Gadsden was convicted under, does not. ECF No. 308 at 2, 8. The government also contends that it proved Bank of America was exposed to a risk of loss. *Id.* at 15-17.

Although the two subsections of § 1344 prohibit different conduct, both require proof that the bank was an actual or intended victim to convict.[22] *See United States v. Royston*, 184

that both financial institutions were victimized, only applies to the conspiracy count; the rest of the counts do not re-allege this paragraph. *See id.*; ECF No. 120 at 4, 10, 12-16. However, the government acknowledged at trial that it needed to prove Bank of America was victimized. *See* 1813ra at 269-71; 1913ra at 12-13. The government also does not argue in its opposition that it only had to prove PNC was victimized to secure a conviction under the indictment. *See* ECF No. 308 at 2, 15-17. Accordingly, because the Court concludes that the government must prove that financial institutions were an actual or intended victim of bank fraud, *see* Section II.B.3., the Court adopts the parties' apparent agreement that the government was required to prove that Bank of America was an intended victim.

[22] This view is not unanimous among the circuits. The Tenth and Sixth Circuits, for example, do not require proof of actual or potential financial loss to a financial institution to convict a defendant under § 1334(2). *See, e.g.*, *United States v. Sapp,* 53 F.3d 1100, 1102-03 (10th Cir. 1995); *United States v. Everett*, 270 F.3d 986, 991 (6th Cir. 2001). The Second and Fifth Circuits, for example, directly hold the opposite. *See, e.g.*, *United States v. Laljie*, 184 F.3d 180, 189-90 (2d Cir. 1999); *United States v. Briggs,* 965 F.2d 10, 12-13 (5th Cir. 1992); *see also* Joseph Callister, Comment, *The Federal Bank Fraud Statute: A Plain Interpretation,* U. Chi. Legal F. 459, 462-69 (2005). Although Fourth Circuit case law is less explicit, several lower courts have concluded that the reasoning of past Fourth Circuit cases suggests that proof of bank victimization is required to

14

F. Supp. 2d 517, 519-21 (W.D. Va. 2002); *United States v. Orr*, 932 F.2d 330, 332 (4th Cir. 1991) ("Under 18 U.S.C. § 1344(1) and (2), the bank has not been defrauded. . . . As a matter of fact, the bank has suffered no loss at all."); *Brandon*, 298 F.3d at 311-12 ("Because § 1344 focuses on the bank, rather than on the potential victims, a conviction under § 1344 is not supportable by evidence merely that some person other than a federally insured financial institution was defrauded in a way that happened to involve banking, without evidence that such an institution was an intended victim.") (*quoting Laljie*, 184 F.3d at 189-90 (internal quotation marks omitted)). However, the bank need not be the direct victim of the fraud, nor suffer an actual loss. *See Brandon*, 298 F.3d at 312. The government can prove the bank was an intended victim of the fraud, if the bank "was exposed to an actual or potential risk of loss."[23] *See id.* (*quoting Colton*, 231 F.3d at 908); *Cocilova*, 584 F. Supp. 2d at 891.

"Presentation to a financial institution of a fraudulent document that exposes the institution itself to a potential loss

---

sustain a conviction under § 1344(2). *See Royston*, 184 F. Supp. 2d at 519-21; *United States v. Cocilova*, 584 F. Supp. 2d 885, 891 (W.D. Va. 2008).

[23] The jury was instructed that they had to find that the banks suffered an actual loss or that "the Defendant placed the banks at a risk of loss and that the banks did not knowingly accept such a risk." 1913ra at 154. The government acknowledges that it did not object to this instruction. ECF No. 308 at 15 n.6.

if the document be honored and funds be released, such as a forged or altered document, is within the scope of § 1344." *Laljie*, 184 F.3d at 189; *see also Brandon*, 298 F.3d at 312. However, if the defendant fraudulently induces the account holder to authorize the withdrawal of funds from its account, the bank is not placed at a risk of loss, and there is no bank fraud. *See, e.g.*, *Orr*, 932 F.2d at 331-32; *Laljie*, 184 F.3d at 189-90; *Brandon*, 150 F. Supp. 2d at 885-88.

Here, viewed in the light most favorable to the government, there was sufficient evidence presented for the jury to infer that Bank of America was exposed to a risk of loss from Gadsden's conduct. Phillips, a Housing Authority employee, testified that the Housing Authority's Section 8 disbursement account was held by Bank of America. 1613x1 at 34, 38. She also testified that almost $1.4 million was transferred from the Housing Authority's Bank of America account in unauthorized ACH debits to accounts set up by Gadsden and his co-conspirators. *See id.* at 66-67, 78. Hersh, a PNC Bank employee, testified that PNC's ACH department notified him "that a customer of ours was going to receive returns from Bank of America,"[24] indicating

---

[24] Gadsden claims that Hersh misspoke in his testimony and meant to say that *PNC* was returning money to Bank of America, because Hersh referred to a customer of "ours," meaning PNC, and the only PNC customer in the suit was Daughtry LLC, a fraudulent company. *See* ECF 309 at 11-12. Without citation, Gadsden asserts that Hersh's "nonsensical testimony" does not create

16

that Bank of America had actual or potential liability for some
of the fraudulently transferred funds.[25]  1513x1 at 5.  Hersh
also testified that PNC had not been liable for all of the $1.4
million in stolen funds, because it was "able to recover some
money from the branches or the banks that the funds were sent
to."  1613x1 at 32.  Although Hersh did not identify Bank of
America specifically, it was reasonable for the jury to infer
that PNC likely recovered some money from Bank of America, given
Hersh's earlier statement about Bank of America's returns and

---

"legally sufficient evidence to show that Bank of America was
actually 'placed at a risk of loss.'"  *Id.* at 13.  However,
testimony from Rainbow Lin, a Housing Authority employee, in the
first trial established that Bank of America reimbursed the
Housing Authority for some of the unauthorized withdrawals.  ECF
No. 308-4 at 4.  Lin's testimony was not offered at the second
trial, and thus could not be considered by the jury.  *See* ECF
No. 309 at 13 n.9.  However, her testimony shows that Hersh's
testimony, while confusing, accurately informed the jury that
Bank of America had to make "returns" of funds as a result of
Gadsden's scheme.  Thus, to the extent that Gadsden argues that
this evidence could not support Gadsden's conviction, because
Hersh inaccurately stated that Bank of America had to make
"returns," he is incorrect.  Gadsden correctly notes, however,
that the government's case at trial would have been much
stronger if it had called Lin or a Bank of America employee to
testify at the second trial as to Bank of America's loss.  *See*
ECF No. 309 at 13 & n.9.

[25] Although Gadsden characterizes the testimony as "nonsensical"
and "hearsay," his counsel did not object to this testimony.
*See* 1513x1 at 5.  Gadsden has made no showing that the Court
committed plain error in admitting Hersh's testimony.  *See*
*United States v. Borders*, 69 F. App'x 130, 132 (4th Cir. 2003)
("Admission of testimony, to which no objection is lodged, is
reviewed for plain error." (*citing* Fed. R. Crim. P. 52(b))).
Accordingly, the evidence was properly considered by the jury.

17

because of the transfer of thousands of dollars from the Housing Authority account to the Fisher LLC Bank of America account.[26] *See* 1513x1 at 5; 1613x1 at 58-59.

The jury could also have inferred that Bank of America was exposed to a risk of loss, because Gadsden set up a Bank of America business account for Fisher LLC, a fraudulent entity. 1613ra at 136-38; 1713n2ra at 160-61. While discussing the Daughtry LLC account, Agent Lynch testified that corporate charter documents were required to open a business banking account and to enable the account to receive direct debits through the ACH network. *See* 1813ra at 118. To obtain these documents for Fisher LLC, Gadsden fraudulently used Fisher's and Gerald's identities. *See* 1613ra at 136-37. Thus, the jury could have inferred that to enable the Fisher LLC Bank of America account to receive funds through ACH, Gadsden presented the fraudulent corporate charter documents to Bank of America and that the misrepresentations in the documents enabled Gadsden to gain access to funds fraudulently transferred from the

---

[26] Gadsden asserts that the Housing Authority could have avoided the losses if it had implemented the ACH block at Bank of America. ECF No. 306 at 6. Although true, there was no evidence that Bank of America would not have been liable for unauthorized transfers, had it provided the ACH block service. *See, e.g.*, 1613x1 at 78-79. Thus, this evidence does not, as Gadsden claims, show that Bank of America was not exposed to a risk of loss. *See* ECF No. 306 at 6.

18

Housing Authority.[27] This testimony and inferences reasonably drawn from this testimony are sufficient to show that Bank of America was exposed to a risk of loss[28] and distinguishes this case from those in which the bank is merely an instrumentality of a fraud perpetrated by means of misrepresentations to third parties.[29]

Gadsden's motion, through counsel, does not otherwise challenge the sufficiency of the evidence to convict him of the

---

[27] *See* 1813ra at 120. ("[T]he James Fisher Consulting bank account was the one that ended up receiving $7,775 in fraudulent credits from the Housing Authority of Baltimore City account.").

[28] *See United States v. McCauley*, 253 F.3d 815, 819-21 (5th Cir. 2001) (finding that Chase Bank and MetroBank were exposed to a risk of loss under § 1334(2) when defendants "create[d] a bank account on behalf of a fictitious company and [attempted] to retrieve the funds" and the "evidence demonstrated that they knowingly misrepresented information to MetroBank to influence it to release funds transferred by Chase Bank").

[29] In *Orr*, the defendant opened up a bank account in a different name using false identification. 932 F.2d at 331-32. The defendant then wrote checks to third parties drawn on the account that were all returned to the payees for insufficient funds. *See id.* at 332. The court found no evidence that the defendant used the fake name "with intent to defraud the bank," because the use of the name was "of no moment to the return of the checks for insufficient funds." *Id.* The bank did not otherwise suffer any loss. *Id.* *Orr* is distinguishable, because the jury could have concluded that presentation of the fraudulent Fisher LLC corporate charter documents was necessary to obtain a business checking account at Bank of America and to enable that account to receive ACH debits. *See* 1613ra at 138; 1713n2ra at 160-61; 1813ra at 118. In other words, Bank of America was not merely an "unwitting instrumentality" of the fraud, but a "target of deception," indicating Gadsden's intent to defraud it. *See United States v. Khorozian*, 333 F.3d 498, 505-06 (3d Cir. 2003) (distinguishing *Orr*, 932 F.2d at 332).

19

bank fraud counts.[30] Accordingly, Gadsden's motion to acquit will be denied.[31] Also, because the evidence presented at trial showed that Bank of America was exposed to a risk of loss, thus supporting the jury's verdict on the bank fraud counts, Gadsden's motion for a new trial will be denied. *See Perry*, 335 F.3d at 320.

C. Attempted Evidence Tampering

Gadsden, through counsel, contends that the government failed to offer sufficient evidence to support his evidence tampering convictions, because: (1) the government had no direct evidence that Gadsden deleted the DKGcredit1 and JamesFisherConsulting email accounts; (2) the government did not prove that Gadsden was the only person who accessed the accounts; and (3) deleting an account does not demonstrate an

---

[30] In his reply brief, Gadsden asserts that the government did not prove that Bank of America did not "knowingly accept the risk" posed by Gadsden's conduct. *See* ECF No. 309 at 10. This argument was not raised in any of Gadsden's opening briefs, and the Court declines to consider this issue raised for the first time in Gadsden's reply brief. *See United States v. Foster*, 387 F. App'x 337, 338 (4th Cir. 2010); *U.S. S.E.C. v. Pirate Investor LLC*, 580 F.3d 233, 255 n.23 (4th Cir. 2009).

[31] Gadsden challenges the sufficiency of the conspiracy to commit bank fraud count and the identity theft counts on the same grounds--failure to prove Bank of America was an intended victim, because it was not exposed to a risk of loss. *See* ECF No. 306 at 6. Assuming, without deciding, that the government had to prove risk of loss to Bank of America to convict Gadsden of these charges, the government offered sufficient evidence for the jury to find that Bank of America was an intended victim of the conspiracy, *see supra* Section II.B.3.

intent to impair its integrity or availability, because Google still had the information in the accounts, and Gadsden could have had several legitimate purposes for deleting the accounts. *See* ECF No. 306 at 7-11. The government asserts that the evidence was more than sufficient to convict Gadsden of attempting to tamper with evidence. *See* ECF No. 308 at 21-22.

Gadsden was convicted on two counts of attempted evidence tampering under § 1512(c)(1), which provides: "Whoever corruptly . . . alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding . . . shall be fined under this title or imprisoned not more than 20 years, or both." Successful destruction of evidence is not required to convict--attempts "to alter, destroy, mutilate, or conceal a record, document or other object" and conduct that merely "obstructs, influences, or impedes any official proceeding," are also within the statute's scope. *United States v. Stevens*, 771 F. Supp. 2d 556, 563 (D. Md. 2011).

The government is not required to present direct evidence, such as eyewitness testimony, of Gadsden's deletion of the accounts--"circumstantial evidence is treated no differently than direct evidence" and may be sufficient to support a

conviction.[32] *See United States v. Jackson*, 863 F.2d 1168, 1173
(4th Cir. 1989). Circumstantial evidence may also be sufficient
even if "it does not exclude every reasonable hypothesis
consistent with innocence," *see id.*,--such as those
hypotheticals offered by Gadsden's counsel as possible innocent
explanations for Gadsden's conduct, *see* ECF No. 306 at 9-10.

The government offered evidence that, within a few days of
Agent Lynch informing Gadsden that he wanted to question Gadsden
about a bank fraud investigation, the Gmail accounts DKGCredit1
and JamesFisherConsulting were deleted. *See* 1813ra at 66-67,
112, 117. The government also offered evidence that these
accounts were associated with the bank fraud scheme--DKGcredit1
was used as the contact email for the fraudulent Gerald NetSpend
card and JamesFisherConsulting was used as the contact email for
the Fisher NetSpend card and for the Fisher LLC entity. 1613ra
at 131-32, 194; 1813ra at 112. A Google employee testified that
the I.P. address used to login to the email accounts matched the

---

[32] The jury was instructed that:

> Circumstantial evidence is of no less value than
> direct evidence. As a general rule, the law makes no
> distinction between direct and circumstantial
> evidence, but simply requires that, before convicting
> a defendant, the jury must be satisfied of the
> Defendant's guilt beyond a reasonable doubt from all
> the evidence in the case.

1913ra at 130. Gadsden's counsel did not object to this
instruction. *See id.* at 1-21.

I.P. address used to login to Gadsden's personal email address, DarenGadsden@Gmail.com.[33] *See* 1713n2ra at 37-42. This evidence was sufficient for the jury to infer that Gadsden used the email addresses to perpetrate the fraud; the accounts likely contained incriminating evidence; he was the person who deleted the accounts; and he deleted the accounts with the intent to destroy evidence relevant to Agent Lynch's bank fraud investigation. Even if Google still had all the contents of the accounts in its records, and thus the records were not actually destroyed, Gadsden could still be convicted for attempting to destroy evidence. *See Stevens*, 771 F. Supp. 2d at 563. Gadsden does not point to any other evidence presented at trial that weighs against the jury's verdict. *See Perry,* 335 F.3d at 320. Accordingly, Gadsden's motion for a judgment of acquittal or for a new trial will be denied.

D. Motion to File a Surreply

The Government moves for leave to file a surreply to Gadsden's reply brief that further supports his motion for a judgment of acquittal. *See* ECF No. 311 at 1. Unless otherwise ordered by the Court, a party generally may not file a surreply. Local Rule 105.2(a) (D. Md. 2012). Because, the Court considered Gadsden's arguments in his opening and reply briefs

---

[33] *See supra* note 10 and surrounding text.

and found that they did not support a judgment of acquittal or for a new trial, the government's motion will be denied as moot.

III. Conclusion

For the reasons stated above, Gadsden's motions for a judgment of acquittal or a new trial will be denied. The government's motions will be denied as moot.

11/20/13
_____
Date

_____
William D. Quarles, Jr.
United States District Judge